IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) one red APPLE iPHONE, (1) one gold APPLE iPHONE and (1) white SAMSUNG GALAXY EXPRESS 3.  These devices are currently located at the Homeland Security Investigations (HSI) Richmond's Office, located at 400 N 8th St, Richmond, VA 23219. | Case Nos. 3:22-sw-117<br>3:22-sw-118<br>3:22-sw-119 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel Leary, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.       I am a law enforcement officer within the meaning of Title 18, United States

Code, Section 2510(7), that is an officer of the United States who is empowered by law to

conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States

Code, Section 2516.  I am a Special Agent with the Richmond, Virginia, office of the Department

of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Homeland Security

Investigations (HSI) and have been employed as a Special Agent since July 2003.  I have been

assigned to working groups that focus on financial crimes, conducted money laundering

investigations, wire fraud investigations, bank fraud investigations, and other financial

investigations.   In the course of my employment as a sworn law enforcement officer, I have

participated in the execution of numerous search warrants resulting in the seizure of computers,

magnetic storage media for computers, other electronic media, and other items evidencing

violations of state and federal laws.

3.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.  The facts, as set forth in this affidavit, show there is

probable cause to search the devices described in Attachment A for evidence, fruits, and

instrumentalities of violations of 18 U.S.C. §§ 1349 (Conspiracy to Commit Bank Fraud), and

1344 (Bank Fraud), as well as 21 U.S.C. § 841(a)(1) (Distribution and Possession with Intent to

Distribute Marijuana) (collectively, the "SUBJECT OFFENSES"), have been committed by

Calvarsi Webb and that such evidence will be located following that search, including evidence

regarding potential conspirators and facilitators of the crimes, further described in Attachment B.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

4.      The property to be searched is: one red Apple iPhone, one gold Apple iPhone and

one white Samsung Galaxy Express 3 (hereinafter references as the SUBJECT DEVICES).

5.      The SUBJECT DEVICES were seized on June 3, 2022, by the US Marshals in

Los Angeles, California while executing an arrest warrant for Calvarsi Webb issued on an

indictment returned by a grand jury in this district under docket number 3:21-cr-106-MHL.

Calvarsi Webb was arrested in his apartment, and arresting officers also located the SUBJECT

DEVICES.  Calvarsi Webb was asked for the passcodes to the phones but refused to provide the passcodes.  Further identifying information is not available on the phones as the phones would need to be accessed to gain that information.

6.     On June 21, 2022, the SUBJECT DEVICES were sent via mail courier from the US Marshals in Los Angeles to your affiant, who received them on June 22, 2022.  The SUBJECT DEVICES are currently stored at the Homeland Security Investigations (HSI) Richmond office, located at 400 N 8th Street, Richmond, VA 23219.

7.     The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

8.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   **Smartphone:** A portable personal computer with a mobile operating system having features useful for mobile or handheld use.  Smartphones, which are typically pocket-sized (as opposed to tablets, which are larger in measurement), have become commonplace in modern society in developed nations.  While the functionality of smartphones may vary somewhat from model to model, they typically possess most if not all of the following features and capabilities: 1) place and receive voice and video calls; 2) create, send and receive text messages; 3) voice-activated digital assistants (such as Siri, Google Assistant, Alexa, Cortana, or Bixby) designed to enhance the user experience; 4) event calendars;

5) contact lists; 6) media players; 7) video games; 8) GPS navigation; 9) digital

camera and digital video camera; and 10) third-part software components

commonly referred to as "apps."  Smartphones can access the Internet through

cellular as well as Wi-Fi ("wireless fidelity") networks.  They typically have a

color display with a graphical user interface that covers most of the front surface

of the phone and which usually functions as a touchscreen and sometimes

additionally as a touch-enabled keyboard.

b. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique

numeric address used by computers on the Internet.  An IP address is a series of

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address

so that Internet traffic sent from and directed to that computer may be directed

properly from its source to its destination.  Most Internet service providers control

a range of IP addresses.  Some computers have static—that is, long-term—IP

addresses, while other computers have dynamic—that is, frequently changed—IP

addresses.

c. **Internet**: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same

state.

4

9.      Based on my training, experience, and research I know that the SUBJECT DEVICES have capabilities that allow it to access the internet and serve as a smartphone.

## **PROBABLE CAUSE**

10.     On September 9, 2021, a magistrate judge issued an arrest warrant following return of a fourteen-count indictment by a grand jury under docket number 3:21-cr-106-MHL in the Eastern District of Virginia, Richmond Division. The indictment charges Calvarsi Webb and Patrick Parrish with 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud); and 18 U.S.C. § 1344 & 2 (Bank Fraud); and 18 U.S.C. § 1028A (a)(1) (Aggravated Identity Theft), and Webb is named in all fourteen counts. Some of the facts underlying the offenses charged in the indictment are set forth in more detail below.

### **General Offense Conduct**

11.     On November 3, 2017, Petersburg police officers assisted officers from Prince George County with the search of Calvarsi Webb's home in Petersburg for evidence of various drug distribution offenses pursuant to a state search warrant. Both Webb and Parrish—along with others, including an individual identified in the indictment as Unindicted Co-Conspirator One (UC-1), were in the house during the search. During the search, officers found credit cards and identifications bearing the names of individuals who did not live in the house, as well as one Florida and two Ohio driver's licenses that bore the names of individuals who did not live in the house, and according to the addresses on the licenses themselves, lived in either Florida or Ohio. One of the Ohio licenses bore the name, "James Casimir" but Parrish's photograph. "Casimir's" name also appeared on one of the credit cards. One of the Florida licenses bore the name "Jonathan Swinford" but Webb's photograph, and "Swinford's" name appeared on one of the

5

credit cards. The other Ohio license bore the name "Tommy McGrady" but Webb's photograph, and again, one of the credit cards bore "McGrady's" name. The officers seized these items, along with a computer and several cell phones, including one belonging to Webb.

12.     Although the faces of the seized cards bore the names of banks like Barclays and Citi, they had been encoded with the stolen names and card numbers of US Bank cardholders. (The encoded information differed from the information embossed on the front of the card.)  The stolen US Bank card numbers had been used for numerous fraudulent purchases around the Richmond and Petersburg metropolitan areas, including hotel room and car rentals.  These transactions included the following:

a.  Payment for two hotel rooms reserved by "James Casimir" (Parrish).

b.  Payment for car rental at Richmond International Airport by "James Casimir" (Parrish).

c.  Payment for car rentals at Richmond International Airport by UC-1 using US Bank card -8452.  The card bearing this encoded number had name "Cassandra Swinford" embossed on its face. While cooperating with law enforcement, UC-1 related that Webb (her boyfriend at the time) had enlisted her help in renting cars from the Richmond Airport using stolen credit card numbers.  UC-1 also related that Parrish was involved in the scheme and said that she had used the name, "Cassandra Swinford" when she rented cars. Finally, UC-1 related that in some instances, the group "sublet" the fraudulently rented cars before returning them, but in other instances sold the cars to individuals or "chop shops."

d.  Payment for car rental at Richmond International Airport by "Tommy McGrady" (Webb).

13.     UC-1 also rented another car at Richmond International Airport using stolen US Bank card number -9013.

14.     Parrish also made an abortive attempt at renting a car from Enterprise at Richmond International Airport using stolen U.S. Bank credit card number 6235 and a false

6

Florida identification similar to ones seized in the Petersburg search bearing his photograph. Parrish was arrested following this attempt and interviewed. Although he did not name Webb or anyone else actually involved with the scheme, he admitted to officers that he was involved with a group of individuals renting cards with stolen credit card numbers and then selling cars.

### Webb's No Contest Pleas in State Court

15.     On December 22, 2020, Webb entered a plea of no contest to an indictment charging him with a single count of obtaining money by false pretenses on January 29, 2019, in violation of Va. Code Ann. Section 18.2-178, in Chesterfield County Circuit Court. In her summary of the evidence underlying the charge, the prosecutor related the following:

      a.  Webb has advertised for sale a 2017 Infiniti rented with a stolen credit card from the Orlando airport.

      b.  The Infiniti's VIN had been changed and fraudulent DMV paperwork had been issued for the sale.

      c.  After responding to the advertisement, S.I. ultimately purchased the Infiniti from Daichelle Anderson (who was also prosecuted in state court for her involvement in the scheme) for $12,500. Although S.I. paid Anderson the funds, Webb is depicted in bank footage also dealing with S.I as to the transaction.

Following this summary, Webb agreed that it was fair, and that it was sufficient to convict him of the offense. When asked whether he had anything else to state before the court sentenced him, Webb stated that he'd "just like to apologize for everything that went on as far as the situation

where innocent people buying a vehicle that wasn't up to par. I can say like if it wasn't up to par, it shouldn't have been sold and I'd like to apologize for that, for my role in that part."

16.    On March 16, 2021, Webb entered a plea of no contest to a single count of obtaining money by false pretenses, in violation of Va. Code Ann. Section 18.2-178, in Petersburg Circuit Court. Webb was represented by counsel at the time of his plea colloquy. When asked to give a summary of the evidence the Commonwealth would have produced at trial, the prosecutor stated the following:

   a.   Cars were being rented at car rental companies, primarily at airports, using stolen credit card numbers. Once rented, the cars were taken to a location in Florida where the Vehicle Identification Numbers on the cars were altered and fraudulent Department of Motor Vehicles paperwork was created for the vehicles. The cars were then sold to innocent purchasers, which was what gave rise to the charge to which Webb was pleading no contest.

   b.   A 2019 Cadillac XT5 and 2018 Chevrolet Tahoe were rented from Hertz Rental Corporation in mid-April of 2019, and then sold in the Tri-Cities area south of Richmond during the following month.

   c.   An individual named A.Y. discovered the Cadillac XT-5 on a Facebook Marketplace Account in the name of "Slagle Ave. Varsi," which was known to be associated with Webb. On May 6, 2019, A.Y. purchased the vehicle from co-defendant Patrick Parrish for the sum of $19,000, which was significantly below the market price for such a vehicle. Following the

purchase, A.Y. discovered that the VIN on the fraudulent paperwork didn't match the VIN on the car.

d.   An individual named R.M. discovered the Chevrolet Tahoe for sale on the "Slagle Ave. Varsi" Facebook Marketplace Account. After Webb met R.M. to provide him with fraudulent DMV paperwork, R.M. purchased the Tahoe from C.B. (an accomplice of Webb's) for the sum of $23,000.

Following this summary of evidence, Webb's attorney agreed that it was accurate. Before that court sentenced Webb, he stated "I'm sorry, and I apologize to everybody that bought the cars."

**Parrish's Guilty Plea in Federal Court**

17.    On March 18, 2022, pursuant to a plea agreement, Parrish pled guilty to Counts One and Fourteen of the federal indictment, which respectively charged him with conspiracy to commit bank fraud and aggravated identity theft.  In the written Statement of Facts supporting the plea, Parrish admitted to participating in a criminal conspiracy with Webb.  As part of the conspiracy, Parrish admitting to renting vehicles using stolen credit card numbers that Webb provided to him.  These rental cars were either (i) "sublet" to other individuals before they were returned; or (ii) sold to "chop shops" or unsuspecting individuals who did not know the vehicles had been stolen from the rental agencies. Parrish also admitted being the seller of 2019 Cadillac XT referenced in paragraph 15 and that Webb had advertised that vehicle on Facebook Marketplace.

**Webb's Post-Indictment Conduct while a Fugitive**

18.     Agents were unable to locate and arrest Webb immediately following his indictment in September 2021. On January 13, 2022, the fugitive investigation was referred to the Marshal's Service for Webb's apprehension on the arrest warrant.  Investigation from January until shortly before Webb's arrest revealed that Webb was a heavy poster of images and videos of himself on his Facebook Account, www.facebook.com/slagleave.varsi (Facebook ID # 100010149648422).  The images and posts show him posing in front of, or on the hood of, high end, Lamborghini vehicles, while holding large stacks of banded U.S. Currency and while wearing designer clothing and gold and diamond jewelry.  In March 2022, he posted photos of himself in Los Angeles, CA and Miami, FL standing in front, or on top of, multiple colored Lamborghini vehicles. Furthermore, on April 20, 2022, Webb posted pictures of himself in front of large bags of what appears to be marijuana.

19.     Webb appeared to have no legitimate means of income that would reasonably allow him to accumulate the amount of wealth that he was displaying on Facebook and discussing in the Facebook Messenger correspondence described below. Given the pattern described here, it is likely that he was continuing the same fraud scheme with which he is charged and/or was involved in the illegal trafficking of marijuana.

20.     On or about April 18, 2022, the U.S. Marshals obtained a search warrant for the Facebook account utilized by Calvarsi Webb.  Meta, the company that owns Facebook, provided the information ordered by the search warrant for Calvarsi Webb's account from the dates of January 14, 2022, through April 18, 2022. The information Meta provided included Webb's Facebook messenger traffic with other individuals.

21.     The Facebook account information revealed that Webb was using the Facebook account to contact individuals to discuss purchasing vehicles.  More specifically, among the messages found were:

    a.   In a string of messages between January 14 and 27, 2022, Webb discusses with Person 1 the purchase of trailer in Maine and use of that trailer to transport cars between Virginia, Florida, and California.

    b.   In a string of messages between January 17 and February 18, 2022, Webb discusses the purchase and sale of numerous vehicles with Person 2.  On March 4, 2022, the two discuss the sale of a vehicle and Person 2 asks Webb, "What's the info bro."  Webb replies, "2018 Dodge Charger Red Scat." Webb then sends a photo of a VIN from the vehicle that shows it as 2C3CDXEJ6JH543950.  On March 10, 2022, Webb sent three (3) photos to Person 2 that display a red Dodge Charger from several angles.  On March 11, 2022, Person 2 asks Webb, "You got title to that one?", and Webb replies, "Yea bro."  On June 27, 2022, your affiant provided the VIN number to an Investigator with the Virginia Department of Motor Vehicles (DMV), Office of Enforcement and Compliance.  The DMV Investigator informed your affiant that the VIN is illegitimate, and the VIN was previously titled by 30K Auto.  30K Auto was known to the DMV as a fraudulent company name utilized by a criminal enterprise that would attempt to legitimize stolen vehicles by changing the VIN and submitting fraudulent documents to gain legitimate titles.

11

c.  Between January 30 and February 12, 2022, Webb provides Person 3 with names and dates of births of multiple individuals as part of a process in which Webb is ordering something from Person 3 and paying for the orders via CashApp.

d.  On February 17, 2022, Person 4 tells Webb that the price on a 2017 Maserati Levante has been reduced to $35,000. Further along in the chat, on February 19, 2022, Webb tells Person 4 that he "got 30k cash tomorrow morning."

e.  On March 13, 2022, Person 5 related information apparently received from Parrish, who was then incarcerated on the federal charges and was preparing to plead guilty. Person 5 was relating Parrish's concerns about what consideration he would receive from Webb for not cooperating with law enforcement in the on-going investigation into the fraud. After Webb, in essence, asserted that he didn't owe Webb anything, Person 5 stated that "Pat said u no he gone stay solid. But how solid u gone keep it on yo end." [sic]. (Given that this conversation is taking place shortly before Parrish's guilty plea and the reference to "Pat," I believe that this is a message being related by Person 5 from Parrish to Webb.) Person 5 goes on to relate that "He said don't get no reward for being solid."

22.    Meta reported that Calvarsi Webb accessed the account using several mobile devices reported as iPhones. Based on my training and experience, I am aware that individuals involved in criminal activity such as that referenced in this affidavit will often use multiple telephones to evade monitoring and detection by law enforcement.

12

23.     At the time of his arrest, Calvarsi Webb was living in an apartment that was a short-term rental.  The rental unit was not obtained using the personal identifying information of Calvarsi Webb, but rather the identifying information of an individual from Florida who was previously unknown to this investigation that had a Florida Driver's License.

24.     During Webb's arrest, the US Marshals found in the apartment: (a) the three telephones that are the subject of this warrant application; (b) four firearms; (c) approximately $15,900 in cash; (d) a money counter; and (e) a large amount of suspected marijuana.

25.     At the time of Calvarsi Webb's arrest, there was a female present in the apartment.  When asked for her identification, she pointed the US Marshals to a backpack that contained her Virginia Driver's License. The backpack also contained the Virginia Driver's License of C.B., the accomplice of Webb's referenced in paragraph 16.

26.     Your affiant believes that the SUBJECT DEVICES recovered from the apartment of Calvarsi Webb during his arrest in Los Angeles on June 3, 2022, will contain information relevant to the investigation into the SUBJECT OFFENSES.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

28.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the SUBJECT DEVICES were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who
used it, and when, sometimes it is necessary to establish that a particular thing is
not present on a storage medium.

29.   *Nature of examination.*  Based on the foregoing, and consistent with Rule
41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT
DEVICES consistent with the warrant.  The examination may require authorities to employ
techniques, including but not limited to computer-assisted scans of the entire medium, that might
expose many parts of the SUBJECT DEVICES to human inspection in order to determine
whether it is evidence described by the warrant.

30.   *Manner of execution.*  Because this warrant seeks only permission to examine the
SUBJECT DEVICES that are already in law enforcement's possession, the execution of this
warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is
reasonable cause for the Court to authorize execution of the warrant at any time in the day or
night.

## **CONCLUSION**

31.     Based on the foregoing, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Daniel Leary
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on June _30__ , 2022.

_____ /s/ MRC
Mark R. Colombell
United States Magistrate Judge

16

## **ATTACHMENT A**

*Property to be searched*

The property to be searched is: (1) one red Apple iPhone, (1) one gold Apple iPhone and (1) one white Samsung Galaxy Express 3. These cellular telephones are referred to as the SUBJECT DEVICES in this affidavit.  The SUBJECT DEVICES are currently secured at the Homeland Security Investigations Richmond's Office, located at 400 N 8th St, Richmond, VA 23219.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Particular things to be seized*

All records on the SUBJECT DEVICES described in Attachment A that relate to violations of 18 U.S.C. §§ 1349 (Conspiracy to Commit Bank Fraud), and 1344 (Bank Fraud), as well as 21 U.S.C. § 841(a)(1) (Distribution and Possession with Intent to Distribute Marijuana), to include the following:

1.      Bank account numbers, credit or debit card numbers, and personal identifying information (including names, dates of birth, and social security numbers);

2.      Vehicle identification numbers (VINs) and contracts for rentals and sales of vehicles;

3.      Communications in which the production of false identification documents, dissemination of personal identifying information, and transportation and sale of fraudulently obtained vehicles are discussed; and

4.      Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.